<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GERMAINE H. KING, | |
| Petitioner, | Civil Action No. 22-7230 (BRM) |
| v. | **OPINION** |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Petitioner Germaine H. King's ("Petitioner") motion to vacate, set aside, or correct his sentence ("Motion") pursuant to 28 U.S.C. § 2255. (ECF No. 1.) Following an order to answer, the Government filed a response to the Motion. (ECF No. 11.) Petitioner filed a reply. (ECF No. 20.) Having reviewed and considered the submissions, for the reasons set forth below and for good cause having been shown, Petitioner's § 2255 Motion is **DENIED** and a certificate of appealability will not issue.

**I.    BACKGROUND**

On March 19, 2018, Petitioner was charged by complaint, along with several co-defendants, with one count of conspiracy to commit mail fraud, 18 U.S.C. § 1349 (count seven), one count of mail fraud, 18 U.S.C. §§ 1341 and 1349 (count eight), and one count of false statements to the United States, 18 U.S.C. § 1001, 1002 (count nine). (Crim. No. 18-379, ECF No. 1 at 8-10.) On March 20, 2018, at Petitioner's initial appearance, the Honorable Cathy L. Waldor, U.S.M.J. ("Magistrate Judge Waldor") appointed Attorney Michael V. Calabro, Esq. to represent Petitioner. (*Id.*, ECF Nos. 14, 16.) At his initial appearance, Petitioner waived his right to a

preliminary hearing and, based on the government and Petitioner's, through defense counsel, joint application for a continuance, Magistrate Judge Waldor entered an ends of justice continuance order. (*Id.*, *see* ECF Nos 17, 38.) The ends of justice continuance order excluded time from March 20, 2018, through May 4, 2018, in computing time under the Speedy Trial Act of 1974. (*Id.*, ECF No. 38.)

On April 16, 2018, Petitioner filed a motion to substitute counsel, requesting the Court remove Attorney Calabro as counsel and allow Petitioner to proceed *pro se*. (*Id.*, ECF No. 43.) On May 16, 2018, Magistrate Judge Waldor entered an order granting Petitioner's request to proceed *pro se,* and Attorney Calabro withdrew as counsel. (*Id.*, ECF No. 57.) At that time, Attorney Paulette L. Pitt, Esq. was appointed as stand-by counsel. (*Id.*) On May 31, 2018, upon joint application of the government and Petitioner, Magistrate Judge Waldor entered another ends of justice continuance order, excluding May 31, 2018, through July 31, 2018, from the time in which an indictment needed to be returned. (*Id.*, ECF No. 58.)

On June 15, 2018, Attorney Anthony J. Pope, Esq. entered his appearance on Petitioner's behalf, and Petitioner's *pro se* status was terminated. (*Id.*, ECF No. 59.) On July 11, 2018, and September 12, 2018, Magistrate Judge Waldor entered two more ends of justice continuance orders, based on the joint requests of the government and Petitioner, through counsel, excluding the time from July 11, 2018 through November 28, 2018 in computing time under the Speedy Trial Act. (*Id.*, ECF Nos. 67, 76.) On October 15, 2018, Eric W. Feinberg, Esq. filed a motion on behalf of the Anthony Pope Law Firm to withdraw as counsel for Petitioner. (*Id.*, ECF No. 82.)

On November 9, 2018, a grand jury for the District of New Jersey returned a Second Superseding Indictment, charging Petitioner, and his co-defendants, with one count of conspiracy to commit bank and mail fraud, 18 U.S.C. § 1349 (count one); three counts of bank fraud, 18

U.S.C. § 1344 (counts two through four), one count of conspiracy to commit mail fraud, 18 U.S.C.

§ 1349 (count five); and ten counts of mail fraud, 18 U.S.C. §§ 1341, 1349 (counts six through

fifteen). (*Id.*, ECF No. 83.)

Briefly, the Third Circuit summarized the basic facts of the case as follows:

> We recount only the basic facts in this complicated tale of fraud that
> begins with [Petitioner] and his wife, Melissa Reynolds, devising a
> plan to use money orders to eliminate their debts. Kusi
> supplemented his work at a New Jersey state agency with a rental
> car business. The luxury kind. Kusi leased several exquisite vehicles
> including a Rolls Royce, a Bentley, and two Mercedes-Benzes. The
> monthly payments on this fleet were unsurprisingly expensive, and
> when Kusi could not pay the bills, he turned to [Petitioner] for help.
> [Petitioner] and Reynolds obliged, explaining they could pay off his
> loans with their "private bank." Using fake checks from [Petitioner]
> and Reynolds, Kusi sent payoff information to his creditors. Most
> figured out the scam quickly, but Bentley did not catch on as fast
> and, thinking payment in hand, they mailed Kusi title to the car. Kusi
> quickly sold the Bentley for $82,000, giving [Petitioner] $25,000.
> But the scheme mostly failed so Kusi filed a bankruptcy petition. He
> left out a few things including, for example, his ownership of several
> guns, his sale of the Bentley, and his $25,000 payment to
> [Petitioner]. He also falsely claimed he was not married and failed
> to report his wife's employment. Federal charges followed for bank,
> mail, and bankruptcy fraud.

(*United States v. King*, 3d Cir. App. No. 20-1138, ECF Nos. 63 at 2.)

On December 6, 2018, the Honorable William J. Martini, U.S.D.J., who was sitting for the

Honorable William H. Walls, conducted a hearing pursuant to *Faretta v. California*, 422 U.S. 806

(1975). (*Id.*, ECF No. 88.) At that time, Judge Martini appointed Kenneth Kayser, Esq. as stand-

by counsel. (*Id.*) The following day, Magistrate Judge Waldor granted Attorney Pope's motion to

withdraw as counsel. (*Id.*, ECF No. 87.)

On June 20, 2019, following a jury trial, Petitioner was convicted on all fifteen counts of

the Amended Second Superseding Indictment. (*Id.*, ECF Nos. 116, 132.) On January 7, 2020, the

Honorable John Michael Vazquez sentenced Petitioner to a 70-month term of imprisonment on

3

each count, to be served concurrently and entered an order of restitution in the amount of $592,780.99 and an order of forfeiture in the amount of $457,000.[1] (*Id.*, ECF Nos. 164, 166.)

On January 17, 2020, Petitioner, through Attorney Kayser, filed a Notice of Appeal to the Third Circuit Court of Appeals. (*Id.*, ECF No. 170.) On January 23, 2020, Attorney Kayser was appointed to represent Petitioner on appeal. (*Id.*, ECF No. 171.) On November 24, 2021, the Third Circuit denied Petitioner's appeal, noting that Petitioner challenged his sentence as "substantively unreasonable" and finding that claim meritless. (*King*, 3d Cir. App. No. 20-1138, ECF Nos. 63, 64.)

On December 12, 2022, Petitioner filed his § 2255 Motion. (ECF No. 1.)

## II.    LEGAL STANDARD

### A.  28 U.S.C. § 2255

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides in relevant part that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert.*

---

[1] On July 23, 2019, Petitioner's criminal matter was reassigned to the undersigned for all further proceedings. (Crim. No. 18-379, ECF No. 149.)

*denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003). A district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255(b); *see also United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir. 2005).

### B.  Ineffective Assistance of Counsel

The United States Supreme Court has set forth a two-part test by which courts must evaluate claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). First, Petitioner must show that "counsel's performance was deficient," which means that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Specifically, counsel's performance is deficient if his representation falls "below an objective standard of reasonableness." *Id.* at 688. In examining the question of deficiency, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. As such, "the [petitioner] bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Next, Petitioner must show the deficient performance prejudiced her. *Strickland*, 466 U.S. at 687. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Where, as here, the petitioner entered into a guilty plea, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

With respect to the sequence of the two prongs, "[a] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Instead, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'" *Id.*; *see also Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010).

## III.    DECISION

Petitioner raises five ineffective assistance of appellate counsel claims in his § 2255 Motion. (*See* ECF No. 1.) Petitioner also raises a claim seeking vacatur of his Restitution Order. (*See id.*)

### A.  Ineffective Assistance of Appellate Counsel - Speedy Trial Act

Petitioner argues his appellate counsel was ineffective in failing to raise a claim on direct appeal regarding the "Government's misconduct in delay[ing] [his] indictment." (ECF No. 1 at 7.) Petitioner argues the Government "conspired" to delay his rights to be indicted with within thirty days of his arrest in violation of his rights under the Speedy Trial Act.[2] (*Id.* at 4–5, 7.) Petitioner claims the Government and his initial defense counsel, Attorney Calabro, "put forth a series of 'pro forma' continuance orders," which were used "for no other purpose than to delay to Government's obligation to bring an indictment." (*Id.* at 4.)

The Speedy Trial Act sets timing deadlines for the stages of a criminal prosecution. *See* 18 U.S.C. § 3161. Any information or indictment charging a defendant must be filed within thirty days of his arrest, and he must be tried within seventy days of the later of his indictment or initial

---

[2] In ground one, Petitioner raises the underlying claim that the Government conspired to violate his right to a timely indictment under the Speedy Trial Act. (*Id.* at 4–5.) Petitioner acknowledges that he did not raise his claim on direct appeal, arguing appellate counsel was ineffective for failing to raise the claim. (*Id.*) As such, the Court will address these grounds together.

appearance. 18 U.S.C. § 3161(b), (c)(1). The Speedy Trial Act generally insists on strict conformity with its deadlines: charges "shall be dismissed" if no indictment or information is filed within the time limit required by section 3161(b). 18 U.S.C. § 3162(a)(2).

However, "the Act recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases. To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Zedner v. United States*, 547 U.S. 489, 497 (2006). Section 3161(h) excludes, in relevant part, from the speedy trial clock:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). For time to be excludable under this section, the court must set forth, "in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.* It is not necessary, however, for the court to articulate facts which are obvious and set forth in the motion for the continuance. *See United States v. Lattany*, 982 F.2d 866, 879 (3d Cir. 1992). In determining whether to grant a continuance, the court must consider, *inter alia*, "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." 18 U.S.C. § 3161(h)(7)(B)(i).

Here, there was no Speedy Trial Act violation. A review of the criminal docket illustrates that the time between Petitioner's initial appearance on March 20, 2018, and November 9, 2018, the day the Second Superseding Indictment was filed against Petitioner, were all excludable speedy

trial days based on the government and Petitioner's joint applications for ends of justice continuances. (Crim. No. 18-379, ECF Nos. 38, 58, 67, 76.) The March 20, 2018, July 11, 2018, and September 9, 2018 joint continuance applications were made by the government and Petitioner's defense counsel on Petitioner's behalf. (*Id.*, ECF Nos. 38, 67, 76.) Additionally, Petitioner acknowledges on May 31, 2018, he agreed to and signed the joint application for a continuance while he was proceeding *pro se*. (*Id.*, ECF No. 58; *see* ECF No. 1 at 5.) Therefore, there was no violation of Petitioner's speedy trial rights.

Additionally, Petitioner now makes a conclusory allegation that the joint continuance requests were "shams" and the delay in the thirty days to indict was "deliberate and intentional[]," to give the government a "prosecutorial advantage." (ECF No. 1 at 5, 7.) However, Petitioner offers no support for this allegation. As noted immediately above, Petitioner himself requested and signed one of the joint applications. As to the applications for continuance made by the government and defense counsel, defense counsel is not required to obtain a client's consent before agreeing to an ends-of-justice continuance under the Speedy Trial Act. *See*, *e.g.*, *United States v. Tulu*, 535 F. Supp. 2d 492, 499 (D.N.J. 2008) ("Nothing in the statute requires that the defendant consent to a continuance. Rather, a court can grant a continuance, over defendant's objection, upon the Government's motion, or on its own motion.") (*citing* 18 U.S.C. § 3161(h)(8)(A)). Counsel may waive a defendant's right to a speedy trial because "[s]cheduling matters are plainly among those for which agreement by counsel generally controls." *New York v. Hill*, 528 U.S. 110, 115 (2000); *Gonzalez v. United States*, 553 U.S. 242, 248 (explaining the Court in *Hill* held that an attorney, acting without indication of particular consent from his client, could waive his client's statutory right to a speedy trial); *United States v. Green*, 516 F. App'x 113, 122 (3d Cir. 2013) (rejecting the

defendant's argument of a Speedy Trial Act violation where the defendant did not consent to the continuance requested by his attorney).

Instead, for a Speedy Trial Act continuance to be valid, a court must determine that "the ends of justice served [by the continuance] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). A judge must set forth its reasons, orally or in writing, for granting such a continuance. *Id.* Magistrate Judge Waldor granted the continuances due to joint representations that the parties sought time to engage in plea negotiations. (Crim. No. 18-379, ECF No. 38, 58, 67, 78.) Plea negotiations are a valid reason to obtain a continuance under the Speedy Trial Act. *See United States v. Fields*, 39 F.3d 439, 445 (3d Cir. 1994). Although Petitioner submits the Government never directly communicated with him regarding a plea, that does not mean that pre-indictment negotiations were not occurring or that discovery was not ongoing to aid in negotiations. *See Tulu*, 535 F. Supp. 2d at 503 (rejecting argument that plea negotiations did not occur because defendant was not informed of the negotiations).

As there was no underlying violation of the Speedy Trial Act, Petitioner's appellate counsel was not ineffective for not raising the meritless speedy trial violation argument. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (finding counsel "cannot be deemed ineffective for failing to raise a meritless claim") Therefore, Petitioner's § 2255 Motion is denied as to this claim.

### B.  Ineffective Assistance of Appellate Counsel - Lack of Jurisdiction

Petitioner next argues appellate counsel was ineffective for failing to raise a claim that the Court lacked "federal jurisdiction" over Petitioner's bank fraud charge. (ECF No. 1 at 7.) Petitioner notes the Second Superseding Indictment charged Petitioner with bank fraud, in violation of 18 U.S.C. § 1344, by charging that "Financial Institution One [Municipal Credit Union] and Financial

Institution Two [Shellpoint Mortgage Servicing, owned by New Penn Financial] were 'financial institutions' within the meaning of Title 18, United States Code, Sections 20 and 27." (*Id.*) Petitioner argues the grand jury was never instructed that "each of the institutions must also 'make(s) in whole or in part a federal related mortgage loan as defined in section 3 of the Real Estate Settlement Procedures Act of 1974." (*Id.*) Petitioner claims the Court lacked jurisdiction over the bank fraud charge because the "federally related mortgage" requirement was not alleged, nor proven by the government. (*Id.*)

Petitioner was convicted of one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 and three counts of bank fraud, in violation of 18 U.S.C. § 1344. 18 U.S.C. § 1344 provides that:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. Section 1349 makes it a criminal offense to conspire to commit bank fraud. *See id.* § 1349 ("Any person who . . . conspires to commit any offense under this chapter [including bank fraud, *see id.* § 1344] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy.").

Section 10 of U.S.C. Title 18 provides, in pertinent part:

> As used in this title, the term "financial institution" means
>
> . . .

> (10) a mortgage lending business (as defined in section 27 of this title) **or** any person or entity that makes in whole or in part a federally related mortgage loan as defined in section 3 of the Real Estate Settlement Procedures Act of 1974. . . .

*Id.* § 20(10) (emphasis added).  A plain reading of the statute shows a "financial institution" as defined in 18 U.S.C. § 20(10) is either a "mortgage lending business" or "any person or entity that makes in whole or in part a federally related mortgage loan." *Id.* Therefore, since the "financial institution" alleged to have been defrauded may be a "mortgage lending business" by itself, it is not necessary that the "mortgage lending business" also be shown to "make[] in whole or in part a federally related mortgage loan." *Id.*

Section 27 of U.S.C. Title 18 defines a "mortgage lending business" as "an organization which finances or refinances any debt secured by an interest in real estate, including private mortgage companies and any subsidiaries of such organizations, and whose activities affect interstate or foreign commerce." *Id.*

The Second Superseding Indictment alleged Financial Institution One, Municipal Credit Union, and Financial Institution Two, Shellpoint Mortgage Servicing, were both "financial institutions" within the meaning of 18 U.S.C. §§ 20 and 27. (Crim. No. 18-379, ECF No. 83.) The evidence produced at trial showed that Financial Institutions One and Two are "financial institutions" within the meaning of § 20.

 At trial, Daniel Wiig, who was a senior attorney at the Municipal Credit Union, testified as follows:

> Q. Let's talk more about the credit union itself. Can you briefly explain what the difference is between a credit union and a bank?
>
> A. Sure. A credit union is a not for profit organization. It's owned by its members. So it's cooperatively owned by its members. It's insured by the National Credit Union Association as opposed to

> FDIC which insures banks. It offers the same products and services as banks such as accounts and various types of loans such as mortgages, auto loans and personal loans.
>
> Q. Just to back up for a second, you indicated that the credit union is insured.
>
> A. Yes, sir.
>
> Q. Who is it insured by?
>
> A. The National Credit Union Association.
>
> Q. And that's part of the National Credit Union Share Insurance Fund?
>
> A. Correct.

(ECF No. 11-4 at 5–6.)

Joshua Bishop, the Chief Compliance Officer for Shellpoint Mortgage Servicing, also testified at trial.

> Q. What is Shellpoint Mortgage Servicing?
>
> A. Shellpoint Mortgage Servicing is a residential loan mortgage servicer. We service mortgages across the United States.
>
> . . .
>
> Q. Sir, at this point I am going to show you government exhibit 74B. Mr. Bishop, what are we looking at?
>
> A. It's the organizational structure of our company.
>
> Q. Directing your attention to the top, what I want you to do is tell us the entity and what it does.
>
> A. Shellpoint Partners, LLC, it's a limited liability corporation in residential mortgage business. It owns various companies in relation to the mortgage industry. The next line down –
>
> Q. Let me stop you right there. What is an LLC?
>
> A. It's a limited liability corporation.

Q. Is it fair to say it's a form of a corporation or corporate entity.

A. Yes.

Q. Continue.

A. New Penn Financial, LLC is a company of Shellpoint partners. Shellpoint partners is wholly owned [by] New Penn Financial. New Penn Financial is a mortgage lender. It originates mortgage and provides funds to people that want to originate a loan and buy a house.

. . .

Q. Is New Penn Financial LLC a mortgage lending business?

A. It is.

Q. What does that mean?

A. It means that it lends funds out to homeowners in order to purchase property.

Q. Where does it operate?

A. It is incorporated out of Delaware and it operates out of Plymouth Meeting, Pennsylvania.

Q. Where does it provide loans? Meaning, are there specific states where they operate and provide loans or mortgages?

A. Yes, 48 states.

Q. Therefore is it fair to say that New Penn Financial operates in interstate commerce?

A. Yes.

(ECF No. 11-4 at 7, 10-14.)

Judge Walls provided the jury with the following instruction regarding the meaning of

financial institutions:

> So, what do we mean when I said I would tell you what financial institutions mean. The term financial institution -- this relates to the counts that we have been discussing. The term financial institution for purposes of the credit union is defined as a credit union with accounts insured by the national credit union share insurance fund. The term financial institution includes a credit union with accounts **insured by the national credit union share insurance fund** and two, a mortgage lending business. The term mortgage lending business means an association, an organization, rather, that finances or refinances any debt secured by an interest in real estate, including private mortgage companies and any subsidiaries of such organizations and **whose activities affect interstate or foreign commerce**.

(ECF No. 11-5 at 3.)

The evidence presented at trial showed that Financial Institutions One and Two were "mortgage lending businesses." Because they were mortgage lending businesses, they also constitute "financial institutions" as defined in 18 U.S.C. § 20. Petitioner has not shown that there is a requirement, and the Court does not see one, that the bank fraud charged must be part of a "federally related mortgage loan." Any claim that the Court lacked "federal jurisdiction" over Petitioner's bank fraud and conspiracy to commit bank fraud claim is meritless. As such, appellate counsel was not ineffective for choosing not to raise the meritless claim. *See Werts*, 228 F.3d at 203. Therefore, Petitioner's § 2255 Motion is dismissed as to this claim.

### C. Ineffective Assistance of Counsel- *Faretta* Hearing

Petitioner argues appellate counsel was ineffective for failing to raise a claim that his *Faretta* hearing was inadequate, and Petitioner did not knowingly and intelligently waive his right to counsel. (ECF No. 1 at 8.) Petitioner represented himself at trial, with the assistance of Attorney Kayser as stand-by counsel. Petitioner now argues he did not knowingly waive his right to counsel. He asserts the Court failed to "advise [him] of the number of benefits that come with the assistance of counsel." (*Id.*) Petitioner argues it is not clear he "understood the charges that the Government

14

in some instances did not need to prove that he was the principal player in order to convict him." (*Id.*) Finally, Petitioner claims it is "apparent that [he] did not understand potential defenses . . . , the range of possible punishment and technical problems that he may encounter in representing himself." (*Id.*)

"The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *United States v. Taylor*, 21 F.4th 94, 99 (3d Cir. 2021) (internal quotation marks omitted) (quoting *Faretta*, 422 U.S. at 819). In *Taylor*, the Third Circuit explained that the Sixth Amendment:

> guarantees a criminal defendant the right to decline the assistance of counsel and to represent himself. *See* [*Faretta*, 422 U.S.] at 819-21; [*United States v.*] *Jones*, 452 F.3d [223,] 228 [(3d Cir. 2006)]. Of course, to exercise this right, a defendant must relinquish his right to counsel and its accompanying benefits. [*United States v.*] *Peppers*, 302 F.3d [120,] 129 [(3d Cir. 2002)]. Thus, he must knowingly, intelligently, and voluntarily waive his right to counsel before a court may allow him to proceed *pro se*. *Buhl v. Cooksey*, 233 F.3d 783, 789 (3d Cir. 2000).

*Id.* at 99–100.

Before allowing a defendant to represent himself *pro se*, "the trial court [shoulders] the weighty responsibility of conducting a sufficiently penetrating inquiry to satisfy itself that the defendant's waiver of counsel is knowing and understanding as well as voluntary." *Id.* at 100 (alteration in original). The Court must engage in a "penetrating and comprehensive examination of all the circumstances" to determine whether the "defendant (1) has clearly and unequivocally asserted his desire to represent himself; (2) understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that [he] may encounter, and any other factors important to a general understanding of the risks involved; and (3) is competent to stand trial." *Id.* at 100; *Jones*, 452 F.3d at 228–29 (quoting *Peppers*, 302 F.3d at 132, 134).

Petitioner claims he did not knowingly and intelligently waive his right to counsel. Petitioner's claim is belied by the transcript of his colloquy, wherein Judge Martini granted his request to proceed *pro se* and appointed stand-by counsel, Attorney Kayser. (*See generally* ECF No. 11-1.) At Petitioner's December 6, 2018 *Faretta* hearing before Judge Martini, Petitioner clearly asserted his desire to represent himself. (*See* ECF No. 11-1 at 20–21.) Petitioner noted that he only wanted counsel appointed as second chair. (*Id.*) Regarding the third factor, Judge Martini did address Petitioner's competence. (*See generally id.*) Petitioner initially indicated that he was not Germaine H. King. Rather, Petitioner wished to be referred to as the living beneficiary of Germaine Howard King. (*See id.* at 8–18.) Judge Martini questioned whether a competency hearing was necessary and stated that he was going to detain Petitioner for a competency hearing. (*Id.*) Petitioner objected and indicated that he was prepared to cooperate. (*Id.* at 15–17.) Petitioner proceeded to answer the Court's questions. (*Id.* at 18–34.) Petitioner testified that he was educated through high school, was forty-one years old, spoke English, and was not under the influence of drugs, alcohol, or medication. (*Id.* at 20.) He also testified he had never been diagnosed with a mental issue. (*Id.*) Judge Martini explained to Petitioner that it was a "complex case with very serious charges" and if he was convicted, he could receive thirty years in prison. (*Id.* at 19.) Petitioner repeatedly indicated he understood what Judge Martini was asking and cautioning and he still wished to proceed *pro se* with second-chair counsel. (*Id.* at 18-34.)

Finally, the record shows Petitioner exhibited a sufficient understanding of the charges against him, the potential penalties and defenses, and a general understanding of the risks involved with representing himself. *See Peppers*, 302 F.3d at 132. During the examination, the Court cautioned a lawyer would understand "the federal rules of procedure and the federal rules of evidence" and the Court would require Petitioner to follow the rules if *pro se*. (ECF No. 11-1 at

22.) Judge Martini explained a lawyer would be able to explain the advantages and disadvantages of how to present a case to the jury and would be able to understand if any potential plea offer was acceptable or not acceptable. (*Id.* at 23.) Petitioner repeatedly indicated he understood. (*See id.* at 22-34.) As explained above, the Court also explained to Petitioner that the charges against him were serious and that he faced a potential thirty-year sentence. (*Id.* at 19.)  *See Peppers*, 302 F.3d 120 (requiring defendant understand the range of possible punishments for waiver to be knowing). Petitioner affirmed that he understood the seriousness of the charges and potential penalties. (ECF No. 11-1 at 19.)

Judge Martini gave to following detailed warning:

> THE COURT: Okay. You should also understand that if you choose, in the end, to represent yourself – which is a very dangerous thing as far as I am concerned. You have a right to do that, but very few people do that and very few people can do it effectively, to be honest with you.
>
> Because as you can see already, I am going to enforce the rules and you have to comply with the rules. And you don't know what the rules are so, it's going to be difficult. And it's not because of you, it's with anybody in this courtroom, I have to enforce the rules. So, it's going to be difficult.
>
> And you should understand that if you did that, you would be on your own. I can't help you. Nobody else in this courtroom can counsel you as to what the rules are. All I can do is say stop it, you are not following the rules. And that doesn't look good in front of the jury. I mean that doesn't help you.
>
> And when you are faced with a serious crime like this, it doesn't help you, and I would have to do that. And I would have to say, just like I said now, sit down and listen to me. I would have to do that and that's not going to help you.
>
> So, nobody can advise you of the rules. You're not familiar with the rules. You have just told me. So, you would be in a sea unknown to you trying to defend yourself against very serious charges. Also, for instance, if you were to have a lawyer, a lawyer would have the ability to contact witnesses to organize your case. It's going to be a

lot of materials to understand. It's not enough for you to just say –
and you will have a right at some point if you want to make a motion
about your living beneficiary, you will have a right to do that. But,
it would be easier for a lawyer to counsel you on how to do that,
when to do that, etc.

Do you understand everything I have said so far?

MR. KING: Clear.

THE COURT: Now, I'm going to just repeat this. It's my advice that
in my opinion a trained lawyer would defend you far better than you
could defend yourself. I think it is unwise for you to try to represent
yourself.

I have never seen anyone represent themselves *pro se* better than
they could have been represented with a lawyer. And, you know, if
you have a lawyer, that doesn't prevent you from taking the stand
and telling your story to the jury. You could tell your story, whatever
it means to be a living beneficiary of Germaine King. That would be
all up to your lawyer to counsel you on if he thinks it's not a good
idea.

But, if you decide you still want to do it, he would have to let you
go and testify as to whatever it is you are trying to explain.

Again, I strongly urge you not to try to represent yourself in this
case. As I think you can start to see already, it's going to be
complicated. And while I have a lot of patience, I can't help you. I
can't tell you what to do, nor can you look to counsel for your co-
defendant and ask him for help. He's here to represent his client, not
you.

Do you have any further questions of me about all of this right now?

Do you understand what I have explained to you?

MR. KING: Clear.

THE COURT: Do you have any further questions of me about this?

MR. KING: Yes, I would like to ask if counsel could be my second
chair.

(*Id.* at 22-25.) Despite the Court's repeated warnings, Petitioner requested to proceed *pro se* with appointed counsel was second-chair.

The Court concludes Petitioner "underst[ood] the nature of the charges, the range of possible punishments, potential defenses, technical problems that [he] may encounter, and any other facts important to a general understanding of the risks involved" in proceeding *pro se*. *See Peppers*, 302 F.3d at 132. Based on this, Petitioner knowingly and voluntarily waived his right to counsel.

### D. Ineffective Assistance of Counsel - Amended Second Superseding Indictment

Petitioner argues appellate counsel was ineffective on direct appeal for failing to argue that the amended superseding indictment was not returned by a grand jury. (ECF No. 1 at 8.)

The Presentment Clause of the Fifth Amendment to the United States Constitution and "[t]he Supreme Court has long held that it is the exclusive province of the grand jury to amend the substance of its indictment." *United States v. Alcorta*, 145 F. Supp. 3d 357, 360 (M.D. Pa. 2015) (citing *Ex Parte Bain*, 121 U.S. 1, 9–10 (1887) and *Stirone v. United States*, 361 U.S. 212, 218 (1960)). At common law, an indictment could be amended in any manner. *Id.* (citing *United States v. Fawcett*, 115 F.2d 764, 766 (3d Cir. 1940)). Today, the court may amend an indictment as to any defect or imperfection in form, provided the change does not prejudice the defendant. *Id.* (citing *Russell v. United States*, 369 U.S. 749, 770 (1962) (It is a "settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form.")) In evaluating an amendment to an indictment, "the precise inquiry is whether the change in the indictment is substantial or material, and not merely one of form." *United States v. Gross*, 511 F.2d 910, 916 (3d Cir. 1975).

Here, a comparison of the second superseding indictment and the amended superseding indictment shows that the only change made in the amended superseding indictment was to the caption. (*Compare* Crim. No. 18-379, ECF No. 83 *with* Crim. No. 18-379, ECF No. 116.) As to Petitioner, the caption was changed from "Germaine H. King" to "Germaine H. King a/k/a 'Germaine Howard.'" (*See id.*) The amended superseding indictment did not change the substance of the indicted charges; it simply added Petitioner's alias. During trial, Petitioner was referred to by the Court as Mr. Howard. Petitioner has failed to show how the addition of Germaine Howard to the caption prejudiced him or that it changed the substance of the indicted charged.

Any claim on direct appeal regarding the amendment to the second superseding indictment would have been meritless. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Therefore, Petitioner is not entitled to habeas relief on this basis.

**E.  Ineffective Assistance of Counsel- Sentencing**

Petitioner argues appellate counsel was ineffective for failing to raise a claim that the sentencing court applied an unlawful sentencing enhancement under *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022). (ECF No. 1 at 9-10.) Petitioner claims the total fraud loss amount was not above $550,000 and therefore the sentencing enhancement did not apply. (*Id.*)

First, on January 17, 2020, Petitioner, through Attorney Kayser, filed a Notice of Appeal to the Third Circuit Court of Appeals. (Crim. No. 18-379, ECF No. 170.) On November 30, 2022, the Third Circuit issued its decision in *Banks*. 55 F.4th 246. *Banks* held that the term "loss" as used in § 2B1.1 is unambiguous and means "actual loss" and, therefore, "the Guideline does not include intended loss." *Id.* at 257. *Banks* was decided well after appellate counsel filed Petitioner's direct appeal. A "counsel's failure to predict a change in the law is not deficient performance." *Fraction*

*v. United States*, 2019 WL 1772053, at *3 (D.N.J. Apr. 23, 2019). Simply put, an attorney cannot be deemed ineffective for failing to comply with legal precedent that was not in effect at the time of representation. *See id.*

Second, *Banks* has not been held to be retroactive on collateral review and should not be held as such in the future because it does not create a new substantive rule. *See Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004) (setting forth new substantive rule narrows the scope a criminal statute by interpreting its terms or places particular conduct or persons covered by a statute beyond the state's power) Therefore, *Banks* does not establish entitlement to relief under § 2255.

Finally, Petitioner has been released from custody rendering his claim that he is entitled a reduction in his sentence moot. The Third Circuit Court of Appeals has recognized:

> The federal courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), and our power to render judgment is circumscribed by the Article III requirement that a live case or controversy exist throughout all stages of litigation, including appellate review, *see* U.S. Const. art. III, § 2; *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). This requirement is satisfied when the parties "continue to have a 'personal stake in the outcome' of the lawsuit." *Lewis*, 494 U.S. at 478, 110 S.Ct. 1249 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). When the parties lose their personal stake in the outcome, the case becomes moot and must be dismissed, even if it once was a live controversy at an earlier stage of the proceedings. *See Davis v. FEC*, 554 U.S. 724, 732–33, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008).

*United States v. Huff*, 703 F.3d 609, 611 (3d Cir. 2013). The case or controversy requirement continues through all stages of federal judicial proceedings, trial and appellate, and requires that parties have a personal stake in the outcome. *Lewis*, 494 U.S. at 477–78. Therefore, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the

defendant and likely to be redressed by a favorable judicial decision." *Id.* at 477. Incarceration satisfies the case or controversy requirement; it is a concrete injury caused by a conviction and is likely to be redressed by invalidation of the conviction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Once a sentence has expired, however, some continuing injury, also referred to as a collateral consequence, must exist for the action to continue. *Id.*

Here, through his claim that the sentencing court improperly applied a total loss 14-point level increase, Petitioner seeks resentencing without the level increase, which would result in a reduction of his sentence, and immediate release from incarceration. (ECF No. 1 at 11.) If Petitioner's claim was challenging his conviction, then that would satisfy the case and controversy requirement as continuing adverse consequences are presumed. *Spencer*, 523 U.S. at 7–8. However, Petitioner is not challenging his conviction in this claim. Rather, he is challenging only the part of the sentence he already completed, so this presumption does not apply. *Id.* at 8. Petitioner fails to point to any continuing adverse consequence. Plaintiff's claim for immediate release from prison would not be redressed by a favorable decision here, as he has already been released from prison. Petitioner's claim is dismissed as moot based on his release from federal custody.

**F. Vacatur of Restitution Order**

In his final claim, Petitioner argues the sentencing court's Order of Restitution and Forfeiture should be vacated because the victim losses were not sustained by the facts in the case.[3] (ECF No. 1 at 12.)

---

[3] Petitioner refers to the Order as only an Order of Forfeiture. (ECF No. 1 at 9.) However, he attached to his Motion the Order of Restitution and Forfeiture, which addresses Petitioner's restitution obligations. (*Id.* at 33.)

"The plain and unambiguous language of § 2255 indicates that the statute only applies to '[a] prisoner in custody . . . claiming the right to be released.'" *United States v. Trimble*, 12 F. Supp. 3d 742, 745 (E.D. Pa. 2014) (quoting 28 U.S.C. §2255(a)). Fines, fees, forfeiture and restitution orders, however, are not sufficient restraints on the liberty of a criminal offender to constitute "custody." *Id.*; *see also Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003); *United States v. Ross*, 801 F.3d 374, 380-81 (3d Cir. 2015). As a forfeiture or restitution order does not qualify as "custody," and because § 2255 is available only to those seeking release from custody, relief under the statute is not available to those seeking to challenge forfeiture or restitution orders. *See Ridley v. Smith*, 179 F. App'x 109, 111 (3d Cir. 2006) (quoting *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999) (collecting cases)); *see also Kaminski v. United States*, 339 F.3d 84, 87-89 (2d Cir. 2003). A claim challenging such an order likewise does not become cognizable simply because it is included within a habeas action which does present cognizable claims challenging an inmate's physical custody. *Trimble*, 12 F. Supp. 3d at 745–46; *Kaminski*, 339 F.3d at 89. That the claim challenging the forfeiture or restitution order is presented as an ineffective assistance of counsel claims does not change this result. *Trimble*, 12 F. Supp. 3d at 746; *see also Shephard v. United States*, 735 F.3d 797, 798 (8th Cir. 2013); *Kaminski*, 339 F.3d at 85 n.1; *United States v Thiele*, 314 F.3d 399, 402 (9th Cir. 2002).

Petitioner's final claim is not cognizable under § 2255. As such, this claim is dismissed and Petitioner's § 2255 Motion is dismissed in its entirety.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating

that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's conclusion, Petitioner has failed to make a substantial showing of the denial of a constitutional right, and no certificate of appealability shall issue.

## V.    CONCLUSION

For the reasons stated above and for good cause having been shown, Petitioner's motion to vacate sentence (ECF No. 1) is **DENIED** and Petitioner is **DENIED** a certificate of appealability. Petitioner's Motion to Expedite Adjudication (ECF No. 22) is **DISMISSED as moot**. An appropriate order follows.

Date: August 6, 2025

*/s/Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**