<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GERMAINE H. KING,<br><br>               Petitioner,<br><br>       v.<br><br>UNITED STATES OF AMERICA,<br><br>               Respondent. | Case No. 2:22-cv-07230 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Petitioner Germaine H. King's ("Petitioner") motion for reconsideration ("Motion") (ECF No. 25), seeking reconsideration of the Court's August 6, 2025 Opinion and Order (ECF Nos. 23, 24) denying Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Government filed a response to the Motion (ECF No. 27), and Petitioner replied (ECF No. 29). Having reviewed and considered the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Rule 78(b), for the reasons set forth below and for good cause having been shown, Petitioner's Motion is **DENIED**.

**I.      BACKGROUND**

The Court previously summarized the history of Petitioner's criminal case, including the multiple ends of justice continuances and multiple changes of counsel, as follows:

> On March 19, 2018, Petitioner was charged by complaint, along with several co-defendants, with one count of conspiracy to commit mail fraud, 18 U.S.C. § 1349 (count seven), one count of mail fraud, 18 U.S.C. §§ 1341 and 1349 (count eight), and one count of false statements to the United States, 18 U.S.C. § 1001, 1002 (count nine). (Crim. No. 18-379, ECF No. 1 at 8-10.) On March 20, 2018, at

Petitioner's initial appearance, the Honorable Cathy L. Waldor, U.S.M.J. ("Magistrate Judge Waldor") appointed Attorney Michael V. Calabro, Esq. to represent Petitioner. (*Id.*, ECF Nos. 14, 16.) At his initial appearance, Petitioner waived his right to a preliminary hearing and, based on the government and Petitioner's, through defense counsel, joint application for a continuance, Magistrate Judge Waldor entered an ends of justice continuance order. (*Id.*, *see* ECF Nos 17, 38.) The ends of justice continuance order excluded time from March 20, 2018 through May 4, 2018 in computing time under the Speedy Trial Act of 1974. (*Id.*, ECF No. 38.)

On April 16, 2018, Petitioner filed a motion to substitute counsel, requesting the Court remove Attorney Calabro as counsel and allow Petitioner to proceed *pro se*. (*Id.*, ECF No. 43.) On May 16, 2018, Magistrate Judge Waldor entered an order granting Petitioner's request to proceed *pro se* and Attorney Calabro withdrew as counsel. (*Id.*, ECF No. 57.) At that time, Attorney Paulette L. Pitt, Esq. was appointed as stand by counsel. (*Id.*) On May 31, 2018, upon joint application of the government and Petitioner, Magistrate Judge Waldor entered another ends of justice continuance order, excluding May 31, 2018 through July 31, 2018 from the time in which an indictment needed to be returned. (*Id.*, ECF No. 58.)

On June 15, 2018, Attorney Anthony J. Pope, Esq. entered his appearance on Petitioner's behalf and Petitioner's *pro se* status was terminated. (*Id.*, ECF No. 59.) On July 11, 2018 and September 12, 2018, Magistrate Judge Waldor entered two more ends of justice continuance orders, based on the joint requests of the government and Petitioner, through counsel, excluding the time from July 11, 2018 through November 28, 2018 in computing time under the Speedy Trial Act. (*Id.*, ECF Nos. 67, 76.) On October 15, 2018, Eric W. Feinberg, Esq. filed a motion on behalf of the Anthony Pope Law Firm, to withdraw as counsel for Petitioner. (*Id.*, ECF No. 82.)

On November 9, 2018, a grand jury for the District of New Jersey returned a Second Superseding Indictment, charging Petitioner, and his co-defendants, with one count of conspiracy to commit bank and mail fraud, 18 U.S.C. § 1349 (count one); three counts of bank fraud, 18 U.S.C. § 1344 (counts two through four), one count of conspiracy to commit mail fraud, 18 U.S.C. § 1349 (count five); and ten counts of mail fraud, 18 U.S.C. §§ 1341, 1349 (counts six through fifteen). (*Id.*, ECF No. 83.)

. . .

2

> On December 6, 2018, the Honorable William J. Martini, U.S.D.J., who was sitting for the Honorable William H. Walls, conducted a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975). (*Id.*, ECF No. 88.) At that time, Judge Martini appointed Kenneth Kayser, Esq. as stand-by counsel. (*Id.*) The following day, Magistrate Judge Waldo granted Attorney Pope's motion to withdraw as counsel. (*Id.*, ECF No. 87.)

(ECF No. 23 at 1–3.)

On June 20, 2019, following a jury trial, Petitioner was convicted on all counts of the Amended Second Superseding Indictment. (Crim. No. 18-379, ECF No. 83.) On January 7, 2020, the Honorable John Michael Vazquez sentenced Petitioner to a 70-month term of imprisonment on each count, to be served concurrently, along with an order of restitution and an order of forfeiture.[1] (*Id.*, ECF Nos. 164, 166.)

On January 17, 2020, Petitioner, through Attorney Kayser, filed a Notice of Appeal to the Third Circuit Court of Appeals. (*Id.*, ECF No. 170.) On January 23, 2020, Attorney Kayser was appointed to represent Petitioner on appeal. (*Id.*, ECF No. 171.) On November 24, 2021, the Third Circuit denied Petitioner's appeal, noting Petitioner challenged his sentence as "substantively unreasonable" and finding that claim meritless. (*King*, 3d Cir. App. No. 20-1138, ECF Nos. 63, 64.)

On December 12, 2022, Petitioner filed his § 2255 Motion. (ECF No. 1.) Petitioner raised five ineffective assistance of appellate counsel claims and a claim seeking vacatur of his restitution order. (*See generally id.*) On August 6, 2025, the Court denied Petitioner's § 2255 Motion in its entirety and denied a certificate of appealability. (ECF No. 23.) Petitioner has filed a notice of appeal with the Third Circuit Court of Appeals, which is currently pending. (ECF No. 28.)

---

[1] On July 23, 2019, Petitioner's criminal matter was reassigned to the undersigned for all further proceedings. (Crim. No. 18-379, ECF No. 149.)

3

On September 4, 2025, Petitioner filed the Motion for Reconsideration, asking the Court to reconsider the denial of his § 2255 Motion and the denial of a certificate of appealability. (ECF No. 25.) Petitioner argues he is entitled to a certificate of appealability on his claim that the Government conspired to delay his rights to be indicted within thirty days of his arrest in violation of his rights under the Speedy Trial Act. (*Id.* at 2.) Next, Petitioner argues the Court "overlooked [his] allegations that Attorney Kenneth Kayser had a 'conflict-of-interest,'" which caused him to provide ineffective assistance of counsel on appeal. (*Id.* at 3–5.) Finally, Petitioner argues he is entitled to a certificate of appealability on his claim that Attorney Kayser provided ineffective assistance for failing to raise a claim that Petitioner's *Faretta* hearing was inadequate on direct appeal to the Third Circuit. (*Id.* at 6–7.)

## II.    LEGAL STANDARD[2]

Federal Rule of Civil Procedure 60(b) provides that a party may file a motion for relief from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed

---

[2] A motion for reconsideration may be filed pursuant Federal Rule of Civil Procedure 59(e) or Federal Rule of Civil Procedure 60(b). Motions for reconsideration filed within Rule 59(e)'s 28-day filing period are construed as timely filed Rule 59(e) motions to alter or amend judgment, rather than as Rule 60(b) motions for reconsideration. *See Rankin v. Heckler*, 761 F.2d 936, 942 (3d Cir. 1985) ("Regardless of how it is styled, a motion filed within ten days of entry of judgment questioning the correctness of judgment may be treated as a motion to amend or alter the judgment under Rule 59(e)."). Here, although Petitioner cites to the standard of review for a motion for reconsideration under Rule 59(e), his motion was filed 29 days after the Court denied his § 2255 Motion. Therefore, a Rule 59(e) motion for reconsideration would be untimely. Considering Petitioner's *pro se* status, the Court construes Petitioner's Motion for Reconsideration as brought pursuant to Rule 60(b).

or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Rule 60(b)(1) permits a court to relieve a party from final judgment for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b). Mistake includes errors by a judge. Rule 60(b)(6) permits a party to seek relief from a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b). Rule 60(b)(6) "is a catch-all provision that authorizes a court to grant relief from a final judgment for 'any . . . reason' other than those listed elsewhere in the Rule." *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014).

Rule 60(b) motions are left to the sound discretion of the trial court, consistent with accepted legal principles applied in light of all relevant circumstances. *Pierce Assoc. Inc. v. Nemours Found.*, 865 F.2d 530, 548 (3d Cir. 1988). "A court may grant a Rule 60(b) motion only in extraordinary circumstances, and a Rule 60(b) motion is not appropriate to reargue issues that the court has already considered and decided." *Weber v. Pierce*, 186 F. Supp. 3d 324, 328 (D. Del. 2016) (citations and footnote omitted); *see also Cox*, 757 F.3d at 120 (quoting *Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993)).

"The standard for granting a Rule 60(b)(6) motion is a high one. The movant must show 'extraordinary circumstances' to justify reopening a final judgment." *Michael v. Wetzel*, 570 F. App'x 176, 180 (3d Cir. 2014) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005)). "[A] showing of extraordinary circumstances involves a showing that without relief from the judgment, 'an "extreme" and "unexpected" hardship will result.'" *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008) (quoting *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977)).

## III.   DECISION

In his Motion for Reconsideration, Petitioner asserts the Court should reconsider its denial of a certificate of appealability. (ECF No. 25.) First, Petitioner argues the Government conspired

5

to delay his rights to be indicted within thirty days of his arrest in violation of his rights under the Speedy Trial Act. (*Id.* at 2.) Next, Petitioner argues the Court "overlooked [his] allegations that Attorney Kenneth Kayser had a 'conflict-of-interest,'" which caused him to provide ineffective assistance of counsel on appeal. (*Id.* at 3–5.) Finally, Petitioner argues he is entitled to a certificate of appealability on his claim that Attorney Kayser provided ineffective assistance for failing to raise a claim that Petitioner's *Faretta* hearing was inadequate on direct appeal to the Third Circuit. (*Id.* at 6–7.)

### A. Speedy Trial Act Claim

First, Petitioner argues "prosecutors obtained several continuances which were, in fact, 'SHAMS with no other purpose than to delay the Government's obligation under the [Speedy Trial Act] to indict [Petitioner] [within 30 days of arrest].'" (ECF No. 25 at 2.) Petitioner supports this claim by quoting the following argument from his § 2255 Motion: "it is questionable whether there was proper judicial oversight in [the Government's] delay tactic" and "the Government did not offer him any 'plea deal[,]'[] nor were there any such negotiations underway." (*Id.*)

The Court thoroughly discussed this argument in denying Petitioner's § 2255 Motion and found no Speedy Trial Act violation. (*See* ECF No. 23 at 6–9.) The Court found there was no Speedy Trial Act violation because the time between Petitioner's initial appearance on March 20, 2018, and November 9, 2018, the day the Second Superseding Indictment was filed against Petitioner, included all excludable speedy trial days based on the Government and Petitioner's joint applications for ends of justice continuances. (*Id.* at 7–8, citing Crim. No. 18-379, ECF Nos. 38, 58, 67, 76.) The Court considered Petitioner's allegation the joint continuance requests were "shams" and found no support for the argument. (*Id.* at 8.) Finally, the Court considered Petitioner's claim he was not offered a plea deal and found the following:

6

> Magistrate Judge Waldor granted the continuances due to joint representations that the parties sought time to engage in plea negotiations. (Crim. No. 18-379, ECF No. 38, 58, 67, 78.) Plea negotiations are a valid reason to obtain a continuance under the Speedy Trial Act. *See United States v. Fields*, 39 F.3d 439, 445 (3d Cir. 1994). Although Petitioner submits that the Government never directly communicated with him regarding a plea, that does not mean that pre-indictment negotiations were not occurring or that discovery was not ongoing to aid in negotiations. *See* [*United States v. Tulu*, 535 F. Supp. 2d 492, 503 (D.N.J. 2008)] (rejecting argument that plea negotiations did not occur because defendant was not informed of the negotiations).

(*Id.* at 9.)

As mentioned above, relief under Rule 60(b) is a very high bar. *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) ("The movant under Rule 60(b) bears a heavy burden[.]"). To meet it, a movant needs to show some "extraordinary justifying circumstances." *Id.* Petitioner does not offer any arguments approximating fraud, mistake, or newly discovered evidence. *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). Rather, Petitioner simply restates the arguments that he made in his § 2255 Motion, which the Court considered and denied. Petitioner's Rule 60(b) Motion is denied as to this issue.

## B. Ineffective Assistance of Counsel - Conflict of Interest and *Faretta* Hearing Claim

Petitioner next argues the Court "overlooked [his] allegations that Attorney . . . Kayser had a 'conflict-of-interest,'" which prevented him from providing effective assistance on direct appeal. (ECF No. 25 at 3.) Petitioner argues Attorney Kayser was stand-by counsel during his "egregiously flawed *Faretta* colloquy." (*Id.*) Therefore, Petitioner claims Kayser had the "motivation to conceal" his involvement in the *Faretta* hearing. (*Id.*) Petitioner argues this resulted in Attorney Kayser failing to raise a claim regarding his *Faretta* hearing on direct appeal to the Third Circuit. (*Id.* at 5.)

7

In his final ground for reconsideration, Petitioner again argues his *Faretta* hearing was flawed. (*Id.* at 6–7.) Petitioner again asserts his waiver of counsel during the *Faretta* hearing was not knowing and intelligent. (*Id.* at 7.) Petitioner claims "reasonable jurists would find debatable right or wrong that Attorney Kayser was ineffective for not presenting the *Faretta* colloquy issue to the Court of Appeals." (*Id.*)

As Petitioner's second and third grounds for reconsideration both assert Petitioner's *Faretta* hearing was flawed, Attorney Kayser was aware Petitioner did not knowingly and intelligently waive his right to counsel, and Attorney Kayser should have raised this claim on appeal, the Court will address them together.

Petitioner again simply re-raises arguments that were presented to the Court in his § 2255 Motion. The Court considered these arguments and the record from Petitioner's *Faretta* hearing and found Petitioner had knowingly and intelligently waived his right to counsel and request to proceed *pro se*. (ECF No. 23 at 14–19.)

The Court first explained the standard for a *Faretta* hearing. (*Id.* at 15.) The Court noted before allowing a defendant to represent himself *pro se*, "the trial court [bears] the weighty responsibility of conducting a sufficiently penetrating inquiry to satisfy itself that the defendant's waiver of counsel is knowing and understanding as well as voluntary." *United States v. Taylor*, 21 F.4th 94, 105 (3d Cir. 2021). Additionally, the trial court must engage in a "penetrating and comprehensive examination of all the circumstances" to determine whether the "defendant: (1) has clearly and unequivocally asserted his desire to represent himself; (2) understands the nature of the charges, the range of possible punishments, potential defenses, technical problems that [he] may encounter, and any other facts important to a general understanding of the risks involved; and

(3) is competent to stand trial." *Id.* at 100; *United States v. Jones*, 452 F.3d 223, 228–29 (3d Cir.

2006). The Court then provided the following analysis of Petitioner's *Faretta* hearing:

> Petitioner claims that he did not knowingly and intelligently waive his right to counsel. Petitioner's claim is belied by the transcript of his colloquy, wherein Judge Martini granted his request to proceed *pro se* and appointed stand-by counsel, Attorney Kayser. (*See generally* ECF No. 11-1.) At Petitioner's December 6, 2018, *Faretta* hearing before Judge Martini, Petitioner clearly asserted his desire to represent himself. (*See* ECF No. 11-1 at 20-21.) Petitioner noted that he only wanted counsel appointed as second chair. (*Id.*) Regarding the third factor, Judge Martini did address Petitioner's competence. (*See generally id.*) Petitioner initially indicated that he was not Germaine H. King. Rather, Petitioner wished to be referred to as the living beneficiary of Germaine Howard King. (*See id.* at 8-18.) Judge Martini questioned whether a competency hearing was necessary and stated that he was going to detain Petitioner for a competency hearing. (*Id.*) Petitioner objected and indicated that he was prepared to cooperate. (*Id.* at 15-17.) Petitioner proceeded to answer the Court's questions. (*Id.* at 18-34.) Petitioner testified that he was educated through high school, was forty-one years old, spoke English, and was not under the influence of drugs, alcohol, or medication. (*Id.* at 20.) He also testified that he had never been diagnosed with a mental issue. (*Id.*) Judge Martini explained to Petitioner that it was a "complex case with very serious charges" and if he was convicted, he could receive thirty-years in prison. (*Id.* at 19.) Petitioner repeatedly indicated that he understood what Judge Martini was asking and cautioning and he still wished to proceed *pro se* with second-chair counsel. (*Id.* at 18-34.)
>
> Finally, the record shows that Petitioner exhibited a sufficient understanding of the charges against him, the potential penalties and defenses, and a general understanding of the risks involved with representing himself. *See Peppers*, 302 F.3d at 132. During the examination, the Court cautioned that a lawyer would understand "the federal rules of procedure and the federal rules of evidence" and the Court would require Petitioner to follow the rules if *pro se*. (ECF No. 11-1 at 22.) Judge Martini explained that a lawyer would be able to explain the advantages and disadvantages of how to present a case to the jury and would be able to understand if any potential plea offer was acceptable or not acceptable. (*Id.* at 23.) Petitioner repeatedly indicated that he understood. (*See id.* at 22-34.) As explained above, the Court also explained to Petitioner that the charges against him were serious and that he faced a potential thirty-year sentence. (*Id.* at 19.)  *See Peppers*, 302 F.3d 120 (requiring

9

defendant understand the range of possible punishments for waiver to be knowing). Petitioner affirmed that he understood the seriousness of the charges and potential penalties. (ECF No. 11-1 at 19.)

Judge Martini gave the following detailed warning:

> THE COURT: Okay. You should also understand that if you choose, in the end, to represent yourself – which is a very dangerous thing as far as I am concerned. You have a right to do that, but very few people do that and very few people can do it effectively, to be honest with you.
>
> Because as you can see already, I am going to enforce the rules and you have to comply with the rules. And you don't know what the rules are so, it's going to be difficult. And it's not because of you, it's with anybody in this courtroom, I have to enforce the rules. So, it's going to be difficult.
>
> And you should understand that if you did that, you would be on your own. I can't help you. Nobody else in this courtroom can counsel you as to what the rules are. All I can do is say stop it, you are not following the rules. And that doesn't look good in front of the jury. I mean that doesn't help you.
>
> And when you are faced with a serious crime like this, it doesn't help you, and I would have to do that. And I would have to say, just like I said now, sit down and listen to me. I would have to do that and that's not going to help you.
>
> So, nobody can advise you of the rules. You're not familiar with the rules. You have just told me. So, you would be in a sea unknown to you trying to defend yourself against very serious charges. Also, for instance, if you were to have a lawyer, a lawyer would have the ability to contact witnesses to organize your case. It's going to be a lot of materials to understand. It's not enough for you to just say – and you will have a right at some point if you want to make a motion about your living beneficiary, you will have a right to do that. But, it would be easier for a lawyer to counsel you on how to do that, when to do that, etc.
>
> Do you understand everything I have said so far?
>
> MR. KING: Clear.

THE COURT: Now, I'm going to just repeat this. It's my advice that in my opinion a trained lawyer would defend you far better than you could defend yourself. I think it is unwise for you to try to represent yourself.

I have never seen anyone represent themselves *pro se* better than they could have been represented with a lawyer. And, you know, if you have a lawyer, that doesn't prevent you from taking the stand and telling your story to the jury. You could tell your story, whatever it means to be a living beneficiary of Germaine King. That would be all up to your lawyer to counsel you on if he thinks it's not a good idea.

But, if you decide you still want to do it, he would have to let you go and testify as to whatever it is you are trying to explain.

Again, I strongly urge you not to try to represent yourself in this case. As I think you can start to see already, it's going to be complicated. And while I have a lot of patience, I can't help you. I can't tell you what to do, nor can you look to counsel for your co-defendant and ask him for help. He's here to represent his client, not you.

Do you have any further questions of me about all of this right now?

Do you understand what I have explained to you?

MR. KING: Clear.

THE COURT: Do you have any further questions of me about this?

MR. KING: Yes, I would like to ask if counsel could be my second chair.

(*Id.* at 22–25.) Despite the Court's repeated warnings, Petitioner requested to proceed *pro se* with appointed counsel was second-chair.

(ECF No. 23 at 16-19.) Based on the above, the Court found Petitioner knowingly and voluntarily waived his right to counsel. (*Id.* at 19.)

11

The Court thoroughly considered Petitioner's arguments and whether Petitioner's *Faretta* hearing was adequate. The Court found Judge Martini conducted a sufficient *Faretta* hearing and Petitioner knowingly waived his right to counsel and choose to proceed *pro se*. Therefore, Attorney Kayser cannot be found ineffective for not raising a meritless claim regarding Petitioner's *Faretta* hearing on appeal. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (finding counsel "cannot be deemed ineffective for failing to raise a meritless claim") Additionally, counsel frequently represent defendants at trial and then on appeal. The fact that Attorney Kayser was stand-by counsel during Petitioner's *Faretta* hearing and then represented Petitioner before the Appellate Division on appeal does not create a conflict of interest. Based on the above analysis and finding the Petitioner's *Faretta* hearing was adequate, Petitioner cannot show Attorney Kayser had a conflict of interest based on the hearing.

Petitioner's motion for reconsideration does not provide any "extraordinary circumstances" that would warrant a reopening of this matter, and it does not present any circumstance of "fraud, mistake, [or] newly discovered evidence." *Gonzalez*, 545 U.S. at 528; *Michael v. Wetzel*, 570 F. App'x 176, 180 (3d Cir. 2014).  Accordingly, Petitioner's Motion for Reconsideration is denied.

## IV.    CONCLUSION

For the reasons stated above, Petitioner's Motion for Reconsideration (ECF No. 25) is **DENIED**. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: March 25, 2026

12